**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000065
30-JAN-2015
08:08 AM**

NO. CAAP-12-0000065

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RANDY L. BRASH, Claimant-Appellant, v.
PROSERVICE HAWAII, Employer-Appellee, Self-Insured, and
SEABRIGHT INSURANCE COMPANY, Third-Party Administrator-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2008-009(WH) (9-06-01212 HON))

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Reifurth, JJ.)

Claimant-Appellant Randy L. Brash appeals from the
January 3, 2012 Decision and Order and the March 21, 2012
Supplemental Decision and Order, both entered by the Labor and
Industrial Relations Appeals Board.[1]  The case involves the
Board's consideration of appeals brought by Employer-Appellee
Proservice Hawaii and Insurance Carrier-Appellee Seabright
Insurance Company from the decision of the Director of Labor and
Industrial Relations concerning the compensation available for an
August 21, 2006 incident in which Claimant fractured the distal

---

[1]     The February 2, 2012 Notice of Appeal failed to attach a copy of
the Decision and Order, while the electronic filing dated March 28, 2012, and
labeled as an "Amended Notice of Appeal," consisted of nothing but a copy of
the Supplemental Decision and Order.  Appellees did not contest either filing,
and addressed the merits of each of Claimant's points of error.  Although
Claimant's filings did not comply with Hawai'i Rules of Appellate Procedure,
the same rule provides that "[a]n appeal shall not be dismissed for
informality of form or title of the notice of appeal."  HAW. R. APP. P.
3(c)(2).  Because Claimant's intention appears evident from what he did file,
and because Appellees do not appear to have been misled by the mistake, we
address the issues raised as if Claimant had complied with all filing rules.
See Ek v. Boggs, 102 Hawai'i 289, 294, 75 P.3d 1180, 1185 (2003) (holding that
appellant's intention to appeal from an order not attached to the notice could
be "fairly inferred").

radius bone in his right arm.

In the Decision and Order, the Board considered five issues:

(a) Whether the Director erred in ordering Employer to continue paying temporary total disability ("TTD") benefits after February 15, 2007;

(b) Whether the Director erred in not awarding Employer a credit for TTD benefits paid from June 11, 2007 to September 14, 2007;

(c) Whether Claimant's left wrist, left elbow, and left shoulder conditions are causally related to the August 21, 2006 work injury;

(d) Whether Employer is liable for a carpectomy and surgery for right carpal tunnel syndrome allegedly arising out of Claimant's August 21, 2006 work injury; and

(e) Whether Claimant is entitled to, and Employer liable for, the surgical request and treatment by Cathleen Godzik, M.D.

The Board concluded that:

(a) the Director did not err in ordering Employer to continue paying TTD benefits after February 15, 2007;

(b) the Director did not err by declining to award Employer credit for TTD benefits paid from June 11, 2007 to September 14, 2007;

(c) Claimant's left wrist, left elbow, and left shoulder conditions are not causally related to the August 21, 2006 work injury;

(d) Employer is not liable for a carpectomy, but is otherwise liable for the course of surgeries for Claimant's right carpal tunnel syndrome and for reconstructive right wrist surgery, both of which relate to Claimant's August 21, 2006 work injury; and

(e) Claimant is entitled to, and Employer liable for, the surgical request of Cathleen Godzik, M.D. for right wrist reconstruction.

In the Supplemental Decision and Order, the Board considered the request by Claimant's counsel for approval of $25,611.03 in attorney's fees and costs. Employer did not object

2

to the request. The Board found that Claimant had prevailed on issues (a), (b), (d), and (e), but Employer had prevailed on issue (c). Holding that Employer had appealed and prevailed upon the "crucial issue" on appeal, the Board reduced the fees allowed and approved $19,694.80 for attorney's fees, applicable taxes, and costs as a lien upon compensation payable by Employer. In so doing, the Board made Claimant responsible for payment of his own attorney's fees.

On appeal, Claimant contends that the Board erred in:

(1) finding that the opinions of Employer's medical experts were more credible than Claimant's medical experts;

(2) finding that Employer presented substantial evidence to overcome a presumption that the subject injury is causally related to the employment activity regarding the alleged injuries to Claimant's left wrist, elbow and shoulder;

(3) concluding that Claimant's left-sided conditions were not causally related to the August 21, 2006 work injury;

(4) stating in the Decision and Order that three, not one, of the Director's decisions were modified;

(5) finding that 150 hours was a reasonable number for purposes of calculating attorney's fees;

(6) reducing the requested attorney's fees by $5,916.23 without a reasonable basis; and

(7) concluding that Claimant was liable for all attorney's fees incurred in Employer's three appeals.

Upon careful review of the records and the briefs submitted by the parties, and having given due consideration to the arguments they advance and the issues they raise, we resolve Claimant's points of error as follows[2] and affirm.

---

[2] Because they are related, we address the first three points together, the fourth point on its own, and the last three points together.

(1-3) Claimant challenges Findings of Fact 28 and 29, and Conclusion of Law 3 from the Decision and Order.[3] As to whether the Board clearly erred in FOF 28 by rejecting the opinions of medical experts, which stated that Claimant's left-side wrist, elbow, and shoulder conditions were caused by Claimant's overuse attributable to his right-arm work injury, it is well-established that we will decline to consider the weight of the evidence or to review an agency's findings by passing upon the credibility of witnesses or conflicts in testimony, especially when presented with the findings of an expert agency dealing with a specialized field. *Moi v. State, Dep't of Pub. Safety*, 118 Hawaiʻi 239, 242, 188 P.3d 753, 756 (App. 2008) (quoting *Nakamura v. State*, 98 Hawaiʻi 263, 267, 47 P.3d 730, 734 (2002)).

We only disturb such findings if, upon review, "of reliable, probative, and substantial evidence on the whole record," *Igawa v. Koa House Rest.*, 97 Hawaiʻi 402, 406, 38 P.3d 570, 574 (2001) (citation omitted), we are left with the "definite and firm conviction that a mistake has been made." *In re Water Use Permit Applications*, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000). Here, such a review does not lead us to this conclusion. Thus, the Board's findings on the credibility of Employer's medical experts in FOF 28 were not clearly erroneous.

As to Claimant's contention that Employer has not presented substantial evidence to overcome the presumption of compensability for a work-related injury, we begin by recognizing

---

[3] FOF 28 and 29 state:

28. The Board credits the opinions that Claimant's left-sided symptoms were not due to an "overuse" of the left upper extremity as a result of the right-sided wrist injury over the opinions to the contrary.

29. The Board has applied the presumption of compensability with regard to the left wrist, elbow, and shoulder and finds that Employer has presented substantial evidence to overcome said presumption of compensability with regard to these alleged injuries.

COL 3 state:

3. The Board concludes that Claimant's left wrist, left elbow and left shoulder conditions are not causally related to the August 21, 2006 work injury.

that Hawaiʻi law does, in fact, establish a presumption in favor of the employee who asserts a claim for workers' compensation—that is, we presume that such a claim relates to a covered work injury. HAW. REV. STAT. § 386-85(1) (1993). In order to overcome this presumption, an employer must first produce substantial evidence showing that the claimed injury is not, in fact, work-related. *Nakamura*, 98 Hawaiʻi at 267, 47 P.3d at 734. Once the burden of production is satisfied, the Board will weigh the employer's evidence against the evidence presented by the claimant. *Id.* at 268, 47 P.3d at 735.

Contrary to Claimant's characterization, Employer's medical expert opinions did not "opine generally" on Claimant's injuries, for they addressed the issue of whether Claimant's left-side injuries could have been caused by the August 21, 2006 work injury. Additionally, the experts offered opinions regarding alternative possible explanations for Claimant's conditions. Thus, the medical expert opinions had "a reasonable degree of specificity" and constituted specific, not "generalized," evidence sufficient to meet the employer's burden of production. *See, e.g., Nakamura*, 98 Hawaiʻi at 269, 47 P.3d at 736 (medical expert opinion was not "generalized" because it identified symptoms of a pre-existing illness separate from the work injury); *Nobunaga v. State, Judiciary Dep't*, No. CAAP-11-0000375, 2014 WL 1271025 at *10 (Haw. Ct. App. Mar. 28, 2014) (physicians did not opine generally, but rendered opinions specifically as to whether claimant had aggravated his existing condition).

After reviewing the record, we are not left with the "definite and firm conviction that a mistake has been made" in the Board's finding that Employer rebutted the presumption of compensability. *In re Water Use Permit Applications*, 94 Hawaiʻi at 119, 9 P.3d at 431; *Igawa*, 97 Hawaiʻi at 406, 38 P.3d at 574. Because Employer presented relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable person that an injury is not work connected, *Nakamura*, 98 Hawaiʻi at 267-68, 47 P.3d at 734-35, the Board did not clearly err and FOF 29 stands.

Finally, as to COL 3, because neither FOF 28 nor FOF 29 was clearly erroneous, the Board did not err in issuing COL 3, which flows directly from those factual findings. *See Wisdom v. Pflueger*, 4 Haw. App. 455, 459, 667 P.2d 844, 848 (1993) (holding that a conclusion which follows from findings that are not properly attacked and is a correct statement of law, is valid.) As such, Claimant's first three points of error are without merit.

(4) In his fourth point of error, Claimant contends that the Board erred in its Decision and Order in stating that it modified three of the Director's decisions when it only modified one. Claimant does not explain any connection between the Board's misstatement in the Decision and Order and its award of attorney's fees in the Supplemental Decision and Order (apart from the contention that it "may have" been related), nor does he cite to any authority supporting this contention. Any error in the Board's misstatement appears, therefore, to be harmless and did not affect Claimant's substantial rights.

(5-7) Claimant's final three points of error challenge the Board's award of attorney's fees to Claimant's attorney—specifically the Board's method of calculation, its basis for the final award, and its award of such fees in the form of a lien on Claimant's prospective workers' compensation award. The Board explained its methodology as follows:

> Applying the [caselaw in *Mitchell v. BWK Joint Ventures*, 57 Haw. 535, 560 P.2d 1292 (1977) and *Yamada v. Royal Hawaiian Macadamia Nut Co.*, 5 Haw. App. 521, 704 P.2d 914 (1985)], it is not sufficient to mechanically count up the number of issues and declare which party prevailed on the larger number of issues [in awarding attorneys' fees under Hawaii Revised Statutes ("HRS") § 386-93(b)]. Nor is it permissible to prorate some of the fees and costs based on whether Employer, for example, lost four of five issues.
>
> Hawaii's [c]ourts have made clear that the crucial issue must be identified in order to determine whether for purposes of Section 386-93(b), HRS, Employer has lost or prevailed.
>
> Here, while the Board has described the January 3, 2012 Decision and Order as one which "affirms in part and modifies in part" the Director's decision, such general description is not entirely conclusive of whether Employer lost for purposes of Section 386-93(b), HRS. That general description is one factor or indicator to be considered but is not itself entirely dispositive.

The "crucial issue" analysis requires the Board to closely examine all issues on appeal. In doing so, it is apparent that the nature of the modification of the Director's decision had more than trivial consequences for the parties. In fact, the Board on the third issue concluded that Claimant's left wrist, left elbow and left shoulder conditions were *not* causally related to the August 21, 2006 work injury.

Consequently, Claimant would not be entitled to medical treatment, services, and supplies therefor, nor would Claimant be entitled to any temporary total or permanent disability relative to his left wrist, left elbow and left shoulder condition.

The consequences of the determination of this issue for Claimant cannot be over emphasized. The lion's share, as it were, of potential future benefit payments (medical bills, temporary disability, and permanent disability) turned on or was contingent upon the compensability of Claimant's left wrist, left elbow and left shoulder. In the absence of such finding of compensability of Claimant's left wrist, left elbow and left shoulder, the case value was significantly diminished. This third issue, though only one of five, is the crucial issue, and Employer prevailed on this crucial issue.

Because Employer prevailed on the crucial issue, Employer did not lose for purposes of Section 386-93(b), HRS. Any fees and costs awarded, therefore, are a lien on compensation.

Claimant contends that the Board erred in considering the reduction in the Employer's liability in identifying the crucial issue in the case, noting that, in *Yamada*, "[t]he court did not consider the employer's reduction in liability as a factor to determine whether they won or lost the appeal; instead it determined that since it lost on both crucial appellate issues, it was liable for the co-employer's attorney's fees." *Yamada*, however, does not preclude consideration of potential future benefit payments in determining whether the Employer has "won" or "lost" before the Board.

In *Yamada*, appellees argued that they did not lose on appeal to the Board because they succeeded in significantly reducing their total liability under the Director's decision. *Yamada*, 5 Haw. App. at 524, 704 P.2d at 916. While we agreed that the Board's decision reflected a reduction in appellees' liability, we applied *Mitchell* and concluded that because appellees contested liability altogether, the crucial issues were (1) whether Yamada's claims against his prior employer were barred by the statute of limitations (appellees claimed that they

were not barred), and (2) whether appellees were liable to Yamada at all for workers' compensation benefits (appellees claimed that they were not). *Id.* at 525, 704 P.2d at 917. Because appellees lost on those two crucial issues, notwithstanding that they succeeded in reducing the Director's TTD award, we concluded that appellees were responsible for fees and costs. *Id.*

Here, unlike in *Yamada*, Employer did not claim that it was not responsible for Claimant's injury or any of his benefits. Employer's appeal to the Board raised a number of issues, but none went so far as to contend that someone else was responsible for the benefits or to deny all liability.[4] Whereas the crucial issue in *Yamada* clearly related to overall liability, and thus the employer lost, the issues here are more targeted and their respective impact is less obvious. In such a case, it is not unreasonable, and it is not barred by *Yamada*, for the Board to incorporate "potential future benefit payments" in determining the "crucial issue."

Claimant argues that the focus of litigation before the Board was Employer's denial of surgeries for Claimant's right wrist injury, because "the time spent in litigation before the Board addressing compensability of the left arm was minimal compared to the issues of Claimant's medical treatment," and as a result, "the Board erred by finding compensability to be the sole crucial issue[.]" None of the cases to which Claimant cited in support of this assertion, however, discuss this type of temporal criteria for use in determining the "crucial issue" before the Board. In *Mitchell*, for instance, the court noted in support of its crucial issue determination that almost all of the witnesses who appeared before the Board addressed that issue. 57 Haw. at 551, 560 P.2d at 1301. That observation does not speak to the

---

[4]     On appeal to the Board, Employer challenged three of the four decisions issued by the Director relating to Claimant's entitlement to workers' compensation benefits stemming from the August 21, 2006 incident. Employer did not appeal from the Director's March 22, 2007 order, which determined that Claimant had suffered an injury to his right wrist by an accident arising out of and in the course of his employment, and that Employer shall pay for such medical care, services, and supplies as the nature of the injury may require, and awarded Claimant TTD benefits from November 9, 2006 through December 15, 2006. The order set aside the matters of permanent disability and/or disfigurement, if any, for later determination.

amount of *time* spent on any particular issue, but it is consistent with the evidence in this case where almost all of the medical experts who appeared before the Board commented on the causation of Claimant's left-sided conditions.

Accordingly, although mathematical precision is not offered, the Board's conclusion that the "lion's share of potential future benefit payments" depended upon resolution of whether Claimant's left-sided conditions were causally related to the August 21, 2006 work injury, appears reasonable and distinguishes the present case from *Yamada* and satisfies *Mitchell*. Therefore, although we recognize the legislative determination reflected in HRS § 386-93(b)—that Employers should pay the reasonable fees and costs associated with those workers' compensation appeals that they take and ultimately lose[5]—such a policy determination is insufficient to support a claim that the Board erred in determining that Employer prevailed on the "crucial issue" on appeal to the Board in this case.

Claimant contends that the Board cannot reduce attorney's fees "without explanation or allocation between fees and costs."[6] With regard to Claimant's opposition to the Board's reduction of fees awarded to Claimant's counsel by $5,916.23,[7] and unlike the cases upon which Claimant relies in support of his point of error on the issue, in this case, the Board articulated

---

[5]    The statute provides, in relevant part:

> (b)   If an employer appeals a decision of the director or appellate board, the costs of the proceedings of the appellate board . . ., together with reasonable attorney's fees, shall be assessed against the employer if the employer loses[.]

HAW. REV. STAT. § 386-93(b) (Supp. 2014).

[6]    With regard to the Board's alleged failure to allocate between fees and costs, we observe that the Board here did so, stating that "[c]osts in the amount of $61.30 are reasonable."

[7]    Claimant contends that because Employer did not file a written objection within ten days to his request for attorney's fees under Hawaii Administrative Rules ("HAR") § 12-47-55, it "accepted liability and that the requested amount was reasonable." The argument is unpersuasive. HAR § 12-47-55 also states that "[n]o request for approval of attorney's fees . . . shall be valid until approved by the board." HAW. ADMIN. R. § 12-47-55. Claimant fails to argue why Employer's lack of objection would validate the attorney's fees.

a basis for its reduction of attorney's fees. Indeed, the Board cited to HRS § 386-94[8] and followed the statutory criteria in calculating counsel's request for fees. In FOFs 4 and 5 of the Supplemental Decision and Order, the Board considered counsel's skill and experience in litigating workers' compensation cases. In FOF 6, the Board considered the hourly rate customarily awarded to attorneys possessing similar skills and experience. Moreover, in FOF 7, the Board sets out its calculation, which appears to account for the amount of fees awarded in similar cases, the amount of time and effort required by the complexity of the case, and the novelty and difficulty of issues involved. Thus, we conclude that the Board sufficiently explained its reasoning in reducing the attorney's fees and costs.

Regarding the wisdom of that reasoning, we note that the Board agreed with counsel concerning the hourly rate she requested, but concluded that counsel had overstated the number of hours necessary to address the complexities of the issues involved on appeal. Therefore, the Board reduced the attorney's fee award to reflect what it believed to be a more appropriate number of hours deserving compensation in this specific case.

Because it provided a reasonable explanation for its reduction and allocated between fees and costs, the Board did not abuse its discretion in reducing the requested attorney's fees. *See Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i*, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005)

---

[8]     The statute provides in relevant part:

In approving fee requests, the director, appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience[.]

HAW. REV. STAT. § 386-94 (Supp. 2014).

(reviewing the denial of attorneys' fees under the abuse of discretion standard).

Therefore,

The January 3, 2012 Decision and Order and the March 21, 2012 Supplemental Decision and Order of the Labor and Industrial Relations Appeals Board are affirmed.

DATED:  Honolulu, Hawai‘i, January 30, 2015.

On the briefs:

Edie A. Feldman,
for Claimant-Appellant.

Carlton W.T. Chun
Leilani A. DeCourcy,
for Employer-Appellee and
Third-Party Administrator-
Appellee.

Chief Judge

Associate Judge

Associate Judge

11